# CASES

# SUPREME JUDICIAL COURT,

# COUNTY OF WASHINGTON,

## 1849.

---

### INHABITANTS OF DENNYSVILLE *versus* IHABITANTS OF TRESCOTT.

A mother, who has entered into a second marriage, has power with the consent of her husband, to emancipate a minor child of her first marriage.

Such an emancipation may be inferred from the conduct of the parties.

A minor child who has been emancipated gains no settlement through that of its mother, acquired after such emancipation.

ASSUMPSIT, to recover for the funeral expenses of Elias Anthony Belbarb, and for supplies to his widow and minor children.

At the trial, before WELLS, J. two questions were presented to the jury, viz : — 1. Whether Mrs. Daily and her husband dwelt and had their home in the town of Trescott, on the 7th of Feb'y, 1827, the time of the incorporation of said town? 2. Whether she emancipated her son Elias, the pauper, before the 7th of Feb'y, 1827 ? The jury answered both questions in the affirmative, and found a verdict for the defendants on that ground.

Dennysville v. Trescott.

The facts proved in the case sufficiently appear in the opinion.

The jury were instructed, that after the death of the father of Elias, Mrs. Daily had the power to emancipate the child, and that after her second marriage, she could still exercise this power, Daily, her husband, consenting to it ; that emancipation was a contract between the mother and minor child, by which she gave up her legal control over him ; that it was not necessary to prove an express and specific contract of emancipation, but that it might be inferred from the acts of the parties and from other evidence ; that if she had emancipated him before the incorporation of Trescott, he not residing there at the time of its incorporation, would not acquire a settlement in that town by virtue of the settlement acquired by his mother, even if he had no settlement in the State, and had not since acquired one.

To these instructions, the plaintiffs filed exceptions.

*Hayden*, for plaintiffs.

1. The mother, particularly after the second marriage, had no power to emancipate the minor.    16 Mass. 52, 135 ; 1 Pick. 197 ; 18 Pick. 264 ; 10 Metc. 439 ; 4 Greenl. 47 ; R. S. chap. 88, § 4.

2. Emancipation would not prevent the child from deriving a settlement from his mother, unless he had a settlement at the time of emancipation, or gained one afterwards.    St. 1821, chap. 122, § 2, clauses 2 and 5 ; cases cited under 1st point ; *Springfield* v. *Wilbraham*, 4 Mass. 493.

3. The mother's control over the child ceases on her second marriage.    The step-father has no control, and as the *quasi* emancipation of the minor by the second marriage, does not prevent his deriving a settlement from her, there is no power of emancipation left during coverture.    2 Kent's Com. § 28 ; 4 Mass. 675 ; 2 Mass. 215 ; 10 Metc. 439 ; 16 Mass. 135 ; 4 Greenl. 47 ; 3 Greenl. 290 ; *St. George* v. *Deer Isle, Ib.* 390.

4. Emancipation being a contract to be proved cannot be inferred from acts.

5. Emancipation may give the minor power to gain a settlement separately from the parent, but can deprive him of no rights which the statute gives. 12 Mass. 283 ; 3 Pick. 172 ; 1 Greenl. 196; 3 Greenl. 390; 4 Greenl. 47, 293 ; 2 Fairf. 456; 18 Maine, 374.

*D. T. Granger,* for defendants.

WELLS, J. — The pauper, Elias Anthony Belbard, was born in April, 1814. His father had no settlement in this State. His mother was married to Daniel Daily in 1821. On the seventh of February, 1827, the town of Trescott was incorporated. Prior to that time, neither of them had gained a settlement. At that time, Daily and his wife dwelt and had their home upon the territory, which was incorporated into the town of Trescott. But Elias did not reside with them. Daily and his wife depose, that after the mariage, Elias never made his home with them ; that they did not control him or take any of his earnings ; that he acted for himself and took care of himself, went where he pleased and employed himself with whom he pleased ; that he lived at different places, and once bound himself to a person, with whom he remained four or five years. He occasionally came to see his mother, who advised him to be a good boy and take care of himself.

By the fifth mode of gaining a settlement, under the act of 1821, chap. 122, § 2, Daily acquired one by the incorporation of Trescott. And by the first mode of the same act, his wife gained one through him. By the second mode, if the father had none within the State, legitimate children follow that of the mother. *Plymouth* v. *Freetown,* 1 Pick. 197 ; *Great Barrington* v. *Tyringham,* 18 Pick. 264 ; *Parsonsfield* v. *Kennebunkport,* 4 Greenl. 47. The pauper would therefore take the settlement of his mother, in Trescott, unless he was emancipated.

It is contended by the plaintiffs, that the mother, after her second marriage, could not emancipate him, so as to prevent his acquiring a settlement in Trescott through her, and that

emancipation must be express, and cannot be inferred from the acts of the parties.

The father-in-law is not bound to support the children of his wife by a former husband, in consequence merely of his union with the mother. But by the fifth section of the act before cited, the mother is bound to support her children, if of sufficient ability. The parental relation subsisting between her and her children is not entirely changed by the second marriage. Why should the law require in a case like this, that the children should follow the mother's settlement, unless she had some duties to discharge in relation to them, and that it would be an act of inhumanity to separate them? Upon the death of the father, having no settlement, the children follow that acquired by her, as the head of the family; they cluster around her, and the law presumes she will not be unmindful of their welfare.

As the father can emancipate his child, so that he may gain a settlement in his own right, the mother, by the settlement law standing in his place, must necessarily possess the same power. The consent of the father-in-law to the emancipation could not impair its force.

Under what circumstances a minor child would be considered emancipated against the will of the mother, after the death of the father, it is not necessary to consider. For in the present case, there was no objection on the part of the mother, that the pauper should be independent of her, and the subsequent acts of the parties were in perfect harmony with the disposition previously expressed.

Nor is it requisite that the emancipation should be express and positive. It may be inferred from the acts and conduct of the parties. But it must be proved by such facts, as indicate its existence.

In *Lubec* v. *Eastport*, 3 Greenl. 220, the father and mother being dead, and the child destitute and without a home, he was considered as emancipated.

In *St. George* v. *Deer Isle*, 3 Greenl. 390, the mother of

the pauper was married to a second husband, but the pauper, not residing with her mother and father-in-law, was considered entitled to her own wages, and free to pursue her own course of life. Emancipation was inferred from these facts. Deer Isle was incorporated prior to the act of 1793, but neither that, nor subsequent acts have introduced any new rule of proof in relation to emancipation.

In *Wells* v. *Kennebunk*, 8 Greenl. 200, it is said, emancipation is not to be presumed, though it may be implied from circumstances. And in that case the mother resigned her son to the care of his grandfather, and did not contribute to his ·support or control him, and he did not seek her aid, or submit to her control, and he was considered as emancipated.

It is moreover contended, that notwithstanding the emancipation, the pauper must follow the settlement of his mother, unless he then had one of his own or had since acquired one. But there the law, relating to settlements, is not susceptible of such construction.

Being emancipated, he could not gain a settlement in the town of Trescott, as he did not reside there at the time of its incorporation, whether he had one in any other town or not. The emancipation disconnects him from his mother, so that he is not drawn to her settlement. He is to be regarded in the same manner, as if he had been twenty-one years of age, and if he had no settlement in the State, then the town in which he fell into distress would be bound to support him.

But upon this question, we are not without precedent. It was decided in *Charlestown* v. *Boston*, 13 Mass. 469, that a minor daughter, whose father was dead, and who was married to an alien, did not take the settlement acquired by her mother, although she had none of her own, because she was considered as emancipated, and that children when separated from their parents, by legal emancipation, are capable of gaining a settlement in their own right, and cannot take a new one gained by their parents.

. We see no just cause to disturb the verdict, on the alleged ground, that it is against the weight of evidence. The facts

are sufficient to justify the jury, in the conclusion to which they have arrived. *Exceptions and motion overruled.*